UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHESTER WILLIAMS, # 134688,

                    Petitioner,                                    Case No. 09-cv-12667

v.                                                                 Honorable Thomas L. Ludington

RAYMOND BOOKER,

                    Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Chester Williams, a state prisoner at Muskegon Correctional Facility in
Muskegon, Michigan, has filed a *pro se* habeas corpus petition challenging his 2005 convictions
for second-degree murder and possession of a firearm during the commission of a felony (felony
firearm). Petitioner is serving a sentence of two years in prison for the felony firearm conviction
and a consecutive term of twenty-five to forty years for the murder conviction. He raises several
issues regarding the jury instructions, the exclusion of certain evidence, his trial and appellate
attorneys, the sufficiency of the evidence, and the prosecution's failure to preserve the deceased
victim's shirt. Respondent Raymond Booker alleges through counsel that Petitioner's claims are
procedurally defaulted, non-cognizable, meritless, or barred by the statute of limitations. Upon
review of the pleadings and the record, habeas relief is not warranted. Accordingly, the petition
will be denied.

## I.

Petitioner was charged in Wayne County, Michigan with first-degree (premeditated) murder and felony firearm. The testimony at his jury trial in Wayne County Circuit Court established that he

> fatally shot Charles Franklin on July 19, 2005, in the home of his fiancé Lynette Sanderson. On the night of the shooting, [Petitioner] used cocaine with Sanderson, Sanderson's friend Nadine Cook, and Franklin in Sanderson's living room. [Petitioner] subsequently left the living room and entered Sanderson's bedroom. Franklin followed. Shortly thereafter, Sanderson and Cook heard a gunshot and saw Franklin stagger away from the bedroom. [Petitioner] left the scene immediately after the shooting. Police arrested [Petitioner] almost one month later.

*People v. Williams*, No. 267951, 2007 WL 4404824, at *1 (Mich. Ct. App. Dec. 18, 2007).

The trial court instructed the jury on first-degree murder and the lesser-included offense of second-degree murder, but denied Petitioner's request to instruct the jury on manslaughter. On December 20, 2005, the jury found Petitioner guilty of second-degree murder, Mich. Comp. Laws § 750.317, and committing or attempting to commit a felony while carrying or possessing a firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of twenty-five to forty years for the murder conviction.

On appeal from his conviction, Petitioner argued through counsel that (1) the trial court erred in denying his motion for a directed verdict of acquittal on the first-degree murder charge, (2) the trial court erred in denying his request for a jury instruction on voluntary manslaughter, and (3) his trial attorney was ineffective for failing to call a firearm expert. In a *pro se* supplemental brief, Petitioner argued that: (1) the trial court deprived him of his right to present a defense when it suppressed evidence of the victim's reputation for violence, and, in the alternative, he was denied his right to effective assistance of counsel; (2) he was denied his right

to present a defense when the prosecutor lost or destroyed exculpatory evidence, and trial counsel was ineffective for failing to request a jury instruction that the evidence would have been favorable to him; (3) his conviction for second-degree murder was not supported by sufficient evidence; (4) the prosecutor argued facts not in evidence; and (5) trial counsel was ineffective for failing to interview witnesses, investigate, move for discovery, and object to the prosecutor's conduct. The Michigan Court of Appeals affirmed Petitioner's convictions, but vacated the portion of the judgment of sentence that required Petitioner to pay attorney fees. *See Williams*, 2007 WL 4404824.

Petitioner raised the same eight claims and two additional claims in the Michigan Supreme Court. The two new claims alleged that the trial court's reporter omitted a police officer's testimony from the transcript of trial and that appellate counsel was ineffective for failing to file a supplemental brief or move to remand the case for an evidentiary hearing. On May 27, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Williams*, 748 N.W.2d 826 (Mich. 2008) (table).

In 2009, Petitioner filed his habeas corpus petition in this Court and asked the Court to stay his case so that he could pursue additional state remedies. *See* Pet. for Writ of Habeas Corpus, ECF No. 1. On October 28, 2009, the Court granted Petitioner's request for a stay and closed his case for administrative purposes. *See* Order Granting a Stay and Closing the Case, ECF No. 7.

Petitioner then filed a motion for relief from judgment in Wayne County Circuit Court. The trial court's successor denied his motion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Williams*, No. 297594 (Mich. Ct. App. Dec. 28, 2010). On September 6, 2011, the

- 3 -

Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Williams*, 802 N.W.2d 343 (Mich. 2011) (table).

On September 16, 2011, Petitioner filed an amended habeas corpus petition, *see* ECF No. 11, and on October 12, 2011, he asked the Court to re-open his habeas case, *see* ECF No. 12. The Court granted Petitioner's motion and re-opened this case. *See* Order Granting Mot. to Re-Open Case, ECF No. 13. The amended petition alleges that: (1) the trial court deprived Petitioner of a fair trial by refusing to instruct the jury on the lesser-included offense of manslaughter; (2) the trial court improperly excluded evidence of the victim's violent and aggressive conduct; (3) Petitioner's trial and appellate attorneys were ineffective; (4) the trial court improperly submitted the charge of first-degree murder to the jury, and the evidence was insufficient to sustain Petitioner's conviction for second-degree murder; and (5) the police failed to preserve critical impeachment evidence.

Respondent argues through counsel in an answer to the habeas petition that habeas claims one, three, and four are barred by the one-year statute of limitations. Respondent also maintains that Petitioner procedurally defaulted two of his claims by relying on a factual basis that was not presented to the state courts. Finally, Respondent argues that Petitioner's claims either are not cognizable on habeas review or are meritless and that any errors were harmless. *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 18. Petitioner concedes that his first claim is not cognizable on habeas review, but he maintains that his other claims have merit and are not time-barred. *See* Reply to Resp't's Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 19.

Neither the one-year statute of limitations, nor the doctrine of exhaustion of state remedies, are jurisdictional matters. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (stating

"the AEDPA 'statute of limitations defense . . . is not 'jurisdictional' " and "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run' ") (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (noting that the rule requiring state prisoners to exhaust state remedies before presenting their claims to a federal court in a habeas corpus petition is not a jurisdictional requirement). Procedural default also is not a jurisdictional bar to review of a claim on the merits. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). The Court, moreover, has concluded from a review of the pleadings and record that Petitioner's claims do not warrant habeas relief. An analysis of whether Petitioner's claims are unexhausted, procedurally defaulted, or barred by the statute of limitations would "add[] nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore "cut[s] to the merits here[.]" *Id.*

## II.

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). While some federal judges find the limitations of § 2254(d) too confining, all federal judges must obey the provision. *White v. Woodall*, 134 S. Ct. 1697, 1701 (2014).

    Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

## III.

### A.

The first habeas claim alleges that Petitioner was deprived of due process and a fair trial by the trial court's denial of his request to instruct the jury on the lesser-included offense of voluntary manslaughter. Petitioner contends that the facts warranted a jury instruction on manslaughter because there was evidence that the victim called him a bitch, attacked him, and attempted to take the gun from him. The Michigan Court of Appeals concluded that the trial court did not abuse its discretion in finding that the evidence did not warrant a jury instruction on voluntary manslaughter. *Williams*, 2007 WL 4404824, at *4. Petitioner maintains that both the trial court and the Michigan Court of Appeals made improper credibility determinations about his state of mind during the crime and thereby invaded the province of the jury.

The United States Supreme Court has not determined whether the failure to give jury instructions on lesser-included offenses in non-capital cases such as this one violates the right to due process. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case."). Thus, the "failure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).

In his reply to Respondent's answer, Petitioner concedes that his claim is not cognizable on habeas review. *See* ECF No. 19, at 5. And even if the Court were to construe his case as a capital case because Petitioner was charged with a crime having the most severe penalty under Michigan law (life without the possibility of parole), a lesser-included offense instruction is not

required when the evidence does not support it. *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).

> The Michigan Court of Appeals explained that,
>
> "[t]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." [*People v. Mendoza*, 664 N.W.2d 685, 690 (Mich. 2003)]. The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes a defendant to act out of passion rather than reason. *People v. Sullivan*, 231 Mich. App. 510, 518; 586 NW2d 578 (1998). The provocation must be that which would cause a reasonable person to lose control. *Id.*

*Williams*, 2007 WL 4404824, at *4. The Michigan Court of Appeals went on to say that the evidence did not support a voluntary manslaughter instruction in Petitioner's case because

> defendant's testimony about the shooting, that Franklin picked a fight with defendant, lunged toward the shotgun, and reached into his pocket to retrieve his own gun, was not supported by credible evidence. Furthermore, even if the jury believed defendant's version of the events, defendant testified that he grabbed the shotgun, deliberately pointed it at Franklin's chest, and asked Franklin to leave before Franklin lunged toward him or reached into his pocket. This evidence indicates that the shooting was deliberate, rather than the result of uncontrollable passion. Defendant's explanation for the shooting, that he was not a joke and that he was not to be "played with," further negates any inference that he lost control and acted out of the heat of passion rather than reason.

*Id*.

The Michigan Court of Appeals correctly concluded that the evidence did not support a jury instruction on voluntary manslaughter. Consequently, even if Petitioner had alleged a cognizable claim, a jury instruction on voluntary manslaughter was not required, and he has no right to habeas relief on the basis of the trial court's failure to instruct the jury on manslaughter.

**B.**

Petitioner alleges that the trial court deprived him of his right to present a complete defense and his right to remain silent when the court limited Lynette Sanderson's testimony

- 8 -

about Charles Franklin's prior violent and aggressive acts. As explained by the Michigan Court of Appeals, Petitioner's claim arose when,

> [d]uring cross-examination, Sanderson testified about Franklin's reputation in the community. Sanderson claimed that Franklin was known as an "aggressive type person" who "would take people's money," and that she told defendant about specific instances when Franklin exhibited aggressive or violent behavior. The prosecution objected, however, when defense counsel attempted to question Sanderson about the specific acts of aggression and violence committed by Franklin that she related to defendant. The trial court excluded the evidence. The court found that defense counsel could question defendant but no other witnesses, about Franklin's specific acts of violence and aggression that defendant was personally aware of and that directly related to the shooting in this case.

*Williams*, 2007 WL 4404824, at *4.

Petitioner claims that the trial court's ruling prevented the jury from (1) hearing a prosecution witness describe the extent of Franklin's prior aggressive acts and (2) considering the circumstances as they appeared to Petitioner at the time. Additionally, Petitioner claims that the trial court's ruling forced him to testify in order to place before the jury specific instances in which the victim acted violently or aggressively.

The Michigan Court of Appeals analyzed Petitioner's claim under state law and agreed with Petitioner that the trial court improperly suppressed Sanderson's testimony about the victim's previous acts of violence and aggression. The Court of Appeals stated that "Sanderson's testimony was admissible to show that defendant had a reasonable apprehension of harm." *Id*. at *5. The Court of Appeals nevertheless determined that the exclusion of the evidence was harmless because it was not outcome-determinative.

## 1.

The Constitution "guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). Nevertheless, "[t]his Court's duty 'is not to determine

whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (quoting *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

Furthermore, the right to present a defense is subject to harmless-error analysis. *See Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th Cir. 2009). On federal habeas corpus review, a constitutional error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (internal quotation marks omitted). This standard applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . .'" *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

**2.**

Lynette Sanderson was not permitted to describe specific incidents of Charles Franklin's behavior in the community, but she was permitted to testify that she saw Franklin with a gun earlier in the day of the shooting. And, when asked whether she had seen Franklin with the gun prior to that date, she answered, "Of course." She also claimed that she had known for a long time that Franklin carried a gun. She further testified that she knew Franklin to be an aggressive person and someone who would take people's money and that she had told Petitioner stories about Franklin. Trial Tr. Vol. III, 77-79, Dec. 15, 2005. Franklin's wife also testified that she had seen Franklin with a gun in the past. Trial Tr. Vol. II, 175, Dec. 14, 2005.

Petitioner subsequently testified about three specific instances of aggressive behavior by Franklin: one incident when Franklin jumped on a man; a second incident when Franklin had a fight with a man named Johnny; and a third incident when Franklin slapped a woman named

- 10 -

Cecilia. Trial Tr. Vol. IV, 51-53, Dec. 19, 2005. Petitioner also testified that he had seen Franklin with a gun three or four times prior to the date of the murder. *Id*. at 53. He claimed that Franklin was known to carry a gun and that he saw Franklin with a gun on the day before the killing. *Id*. at 69-71. He also claimed that, on the day of the murder, he saw Franklin with a metal object, which Franklin put in his pocket and which could have been a gun. *Id*. at 54.

Given the substantial testimony about Franklin's aggressiveness and habit of carrying a gun, the trial court's ruling that Lynette Sanderson could not testify about Franklin's specific acts of violence and aggression did not deprive Petitioner of his right to present a complete defense. In the alternative, the trial court's ruling could not have had a substantial and injurious effect on the jury and was harmless.

The limitations placed on Sanderson's testimony did not, as Petitioner also argues, force him to abandon his right not to testify. He avers that he intended to exercise his Fifth Amendment right not to testify and that he felt compelled to testify after the trial court improperly suppressed Sanderson's specific-acts testimony, but the record contradicts this assertion. Even before the issue of Franklin's specific acts of violence and aggressiveness arose, defense counsel informed the jury that Petitioner would testify. Trial Tr. Vol. II, 163-64, Dec. 14, 2005. Furthermore, a defendant may not "make an otherwise harmless error harmful based on [the] simple assertion that the error compelled [the defendant] to testify." *United States v. Siddiqui*, 699 F.3d 690, 704-05 (2d Cir. 2012). Petitioner therefore has no right to relief on the basis of his second claim.

- 11 -

## C.

Petitioner alleges next that his trial attorney was ineffective for failing to object when the trial court re-instructed the jury in Petitioner's and his attorney's absence. Petitioner further alleges that his appellate attorney should have raised this issue on direct appeal.

Petitioner raised a related issue in his motion for relief from judgment, arguing that there were *ex parte* communications between the trial court and the jury. The trial court's successor determined on post-conviction review that the exhibits in question were submitted to the jury after consultation with counsel and that any presumed prejudice from providing the jury with a comparison chart and a written copy of the instructions on murder was overcome.

## 1.

Petitioner had a constitutional right to be present "at all critical stages of the trial . . . ." *Rushen v. Spain*, 464 U.S. 114, 117 (1983). He also had the right to counsel at critical stages of the trial. *United States v. Cronic*, 466 U.S. 648, 659 & 659 n.25 (1984); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992). But to prevail on his claim that his attorneys failed to make an objection or raise an issue, he must show that his attorneys' performances were deficient and that the deficient performances prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hodges v. Colson*, 727 F.3d 517, 541-42 (6th Cir. 2013).

An attorney's performance is deficient if "in light of all the circumstances, the identified acts and omissions were outside the wide range of professionally competent assistance." *Strickland* , 466 U.S. at 690. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

To satisfy the prejudice prong of the *Strickland* test, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

**2.**

The trial court charged the jurors on the fourth day of trial and informed them that they could ask for the exhibits if they wanted to look at any or all of them. At about 3:55 p.m., the court sent the jurors to the jury room to select a foreperson and to begin their deliberations. The attorneys then informed the trial court that they had no objections to the jury instructions. Trial Tr. Vol. IV, 140, 142, Dec. 19, 2005.

The next morning at about 10:20 a.m., the trial court informed the attorneys that the jury had reached a verdict. The following conversation occurred immediately afterwards:

> THE COURT: We also had a note just before we left last evening asking for the exhibits and asking for the elements of the murder charges. Both of those were given to them about 9:20 this morning.

> MS. ZEIGER (the prosecutor): May I clarify something? They only asked for specific exhibits. They asked for photographs of the house. So the record is clear.

> THE COURT: Oh, I'm sorry. Let me look at the note. Here it is. They asked for photographs of the house interior. Those were given to them with the agreement of counsel and they wanted something in writing detailing murder first degree premeditated and murder second degree. I gave them first degree with the specific intent elements, with the specific intent definition, and I gave them the second-degree elements as well as the chart which sets the two side-by-side.

Trial Tr. Vol. V, 3, Dec. 20, 2005.

- 13 -

The prosecutor's and the trial court's comments indicate that the attorneys were present and that they approved of the trial court providing the jurors with the requested exhibits. Thus, there was no basis for arguing that the trial court engaged in an *ex parte* communication with the jury when it handed photographs of the interior of Lynette Sanderson's house to the jury.

The remaining question is whether Petitioner's attorneys should have objected as a result of the trial court providing the jury with written jury instructions on the elements of first- and second-degree murder and a chart comparing the two offenses. It appears from the record that both Petitioner and his attorney were present when the trial court gave the written instructions and chart to the jury. Even if they were absent at the time, it appears from the trial court's comments quoted above that it merely gave the jury a written copy of the instructions which it had previously read to the jury with the attorneys' approval. And the trial court's successor concluded on state collateral review that the comparison chart was CJI 2d 1.6, which was provided to jury "in conjunction with the specific instructions as directed in the instructions themselves." Op. and Order Denying Def.'s Mot. for Relief from Judgment, No. 05-008891-01-FC (3d Jud. Cir. Ct. Mar. 18, 2010) at 4-5, ECF No. 23-17.

> Although certain instances of jury re-instruction and the reading of supplemental instructions qualify as critical stages of a trial, *see, e.g., Valentine v. United States*, 488 F.3d 325, 335 (6th Cir. 2007); *Caver v. Straub*, 349 F.3d 340, 350 (6th Cir. 2003), the re-reading of identical jury instructions does not. *See Hudson [v. Jones*, 351 F.3d 212, 217 (6th Cir. 2003)]. Providing the jury with a written copy of instructions that have already been delivered orally is not a critical phase of a trial.

*Phillips v. Bradshaw*, 607 F.3d 199, 224 (6th Cir. 2010). Thus, even assuming that Petitioner and his attorney were absent when the court provided the jury with a written copy of the jury instructions on murder and the comparison chart, this was not a critical stage of the proceedings. Petitioner's right to be present and his right to counsel, accordingly, were not violated, and his

- 14 -

attorneys were not ineffective for failing to raise a meritless issue. *Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

**D.**

The fourth habeas claim alleges that the trial court improperly submitted the charge of first-degree murder to the jury because there was no evidence that he premeditated the crime. Petitioner further alleges that there was insufficient evidence to sustain his conviction for second-degree murder because the prosecution failed to show he did not act in self-defense.

**1.**

Petitioner's claim that the state trial court improperly submitted the first-degree murder charge to the jury will be taken up first. Petitioner claims that there was insufficient evidence of premeditation, a necessary element of first-degree murder, and that the jury could have reached its verdict because they improperly considered and compromised on a charge to which it never should have been exposed.

To the extent Petitioner is claiming that the trial court misapplied the state standard for deciding motions for a directed verdict,[1] his claim is not cognizable on habeas review. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). Furthermore, it is not clear that the Court must address the sufficiency of the

---

[1] *See People v. Schultz*, 635 N.W.2d 491, 496 (Mich. Ct. App. 2001) ("In ruling on a motion for a directed verdict, the trial court must consider in the light most favorable to the prosecutor the evidence presented by the prosecutor up to the time the motion is made and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.").

evidence supporting the first-degree murder charge because Petitioner was acquitted of that charge. "Some courts, under similar facts have concluded that submission to the jury of a charge constituted harmless error in light of petitioner's acquittal on that charge." *Daniels v. Burke*, 83 F.3d 760, 765 n.4 (6th Cir. 1996) (citing *Howard v. United States*, 389 F.2d 287, 292 (D.C. Cir. 1967); *United States v. Alexander*, 471 F.2d 923, 966 (D.C. Cir. 1972); and *United States v. Dent*, 477 F.2d 447 (D.C. Cir. 1973)).[2]

To the extent Petitioner has raised a cognizable claim, the issue is whether "there was sufficient evidence from which to conclude that petitioner was guilty of first degree murder . . . ." *Daniels*, 83 F.3d at 765. If there was, his argument fails. *Id.*

"To establish first-degree premeditated murder, the prosecution must prove that the defendant intentionally killed the victim and the act of killing was deliberate and premeditated." *People v. Haywood*, 530 N.W.2d 497, 503 (Mich. Ct. App. 1995). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look at his actions. This time interval may be minimal." *People v. Gonzalez*, 444 N.W.2d 228, 230 (Mich Ct. App. 1989) (internal citation omitted). Premeditation and deliberation may be inferred from all the facts and circumstances, including the parties' prior relationship, the defendant's actions before

---

[2] *But see Williams v. Jones*, 231 F. Supp.2d 586, 594 (E.D. Mich. 2002):

The Supreme Court's harmless error analysis in [*Price v. Georgia*, 398 U.S. 323 (1970)] establishes the rule that the unconstitutional submission of a greater charge to a jury is not harmless beyond a reasonable doubt simply because the jury convicts on a lesser, but properly submitted, charge. It makes little difference that the basis upon which the submission was improper is the Double Jeopardy Clause or the Due Process Clause. The net effect is the same. Thus, if the trial judge's submission of the first-degree murder charge in the petitioner's trial violated the constitution, the error would not have been harmless because the jury may have improperly considered, and compromised from, a charge to which it never should have been exposed. To hold otherwise would constitute an unreasonable application of *Price*.

- 16 -

and after the killing, and the killing itself. *Haywood*, 503 N.W.2d at 231. The element of premeditation may also be inferred from the type of weapon used, the location of the wound inflicted, and the defendant's own statement. *People v. Berry*, 497 N.W.2d 202, 204-05 (Mich. Ct. App. 1993).

The record indicates that, shortly before the shooting, Petitioner, Lynette Sanderson, and Charles Franklin had a discussion about jealousy and whether Sanderson and Franklin were having an affair. Although Petitioner apparently apologized for being jealous or suspicious, the discussion indicates that there was some ill will between Franklin and him.

Petitioner then went to Sanderson's bedroom where Sanderson kept a gun. Shortly afterwards, Franklin went to the doorway of the bedroom. Petitioner testified at trial that Franklin asked him for more cocaine, and when Petitioner stated that he did not have enough cocaine to sell, Franklin told Petitioner that he was acting like a little bitch. Petitioner returned the insult, telling Franklin that he was acting like a bitch. Franklin then swung at Petitioner and hit him on the side of his face. Petitioner testified that, as he stumbled backward, he grabbed a loaded shotgun that was nearby and pointed the gun at Franklin's chest. Petitioner admitted at trial that he did not see anything in Franklin's hands at the time. Continuing, Petitioner explained that he then told Franklin to leave. Franklin, however, tried to grab the gun with one hand and reach in his pocket with his other hand. At that point, Petitioner fired his gun at Franklin, even though Franklin did not actually touch the gun, did not threaten Petitioner, and could have been four or five feet away from Petitioner. Trial Tr. Vol. IV, 55-65, 77-80, Dec. 19, 2005.

A rational juror could have inferred from Petitioner's jealousy, his use of a shotgun, and his deliberate act of aiming the shotgun at Franklin's chest that Petitioner premeditated the murder. Also, following the shooting, Petitioner informed Lynette Sanderson and Nadine Cook

that he shot Franklin because he "[wasn't] no joke." And, instead of helping Franklin, calling for assistance, or turning himself into the police, he eluded the police for twenty-seven days. These are additional indications that Petitioner may have deliberated and premeditated the killing.

A rational trier of fact could have concluded from Petitioner's conduct and the other circumstances of the crime that Petitioner intended to shoot Franklin and that he had enough time to take a second look at his actions and premeditate the shooting. Therefore, the trial court did not violate Petitioner's right to due process when it denied Petitioner's motion for a directed verdict of acquittal on the first-degree murder count. And because the Michigan Court of Appeals reasonably concluded that there was sufficient evidence of premeditation, Petitioner has no right to relief on the basis of his challenge to the denial of his motion for a directed verdict of acquittal.

## 2.

The remaining question is whether there was sufficient evidence to support Petitioner's conviction for second-degree murder. The Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

> The state need not rule out every hypothesis except that of guilt beyond a reasonable doubt, and the reviewing court need not be convinced of petitioner's guilt beyond a reasonable doubt. *Neal v. Morris*, 972 F.2d 675, 677-78 (6th Cir. 1992) (citation omitted). Moreover, the jury's credibility determinations are entitled to "special deference." *Brown v. Davis*, 752 F.2d 1142, 1147 (6th Cir. 1985). *See also United States v. Wynn*, 987 F.2d 354, 358 (6th Cir. 1993) ("Questions of credibility are primarily for the jury to decide.").

*Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The *Jackson* standard ordinarily must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In Michigan,

> [t]he elements of second-degree murder are "'(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.'" [*People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67 (2001)], quoting *People v. Mayhew*, 236 Mich. App. 112, 125, 600 N.W.2d 370 (1999), quoting *People v. Goecke*, 457 Mich. 442, 463–464, 579 N.W.2d 868 (1998). Malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, supra at 464, 579 N.W.2d 868. Malice may be inferred from evidence that the defendant "intentionally set in motion a force likely to cause death or great bodily harm." *People v. Djordjevic*, 230 Mich. App. 459, 462, 584 N.W.2d 610 (1998). The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove "'the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Aldrich*, supra at 123, 631 N.W.2d 67, quoting *Mayhew*, supra at 125, 600 N.W.2d 370.

*People v. Werner*, 659 N.W.2d 688, 692 (Mich. Ct. App. 2002).

Petitioner did not deny shooting and killing Charles Franklin, and there was sufficient evidence that he intended to kill Franklin or cause great bodily harm to him. In the words of the Michigan Court of Appeals,

> a reasonable juror could have inferred from the testimony at trial that defendant intentionally shot Franklin because he believed that Franklin had an affair with his fiancé. Defendant's statements after the shooting, that he was not a joke and that he was not to be "played with," also implied that the killing was intentional. More importantly, however, defendant admitted that after Franklin approached the bedroom, he grabbed a shotgun, deliberately pointed the shotgun at Franklin, and then shot Franklin in the chest.

*Williams*, 2007 WL 4404824, at *2 (internal citation omitted). The Court of Appeals concluded "that this evidence was more than sufficient to find that [Petitioner] intentionally set in motion a force likely to cause death." *Id*.

Petitioner maintains that the prosecution failed to disprove that he acted in self-defense. But the Michigan Court of Appeals disagreed with this contention also. The Court of Appeals

- 19 -

explained that, although the prosecution has the burden of disproving a defense of self-defense, "[t]he killing of another person in self-defense is justifiable homicide only if the defendant honestly and reasonably believes that he is in imminent danger of death or serious bodily harm." *Id.* at *3.

Besides the evidence summarized above, there was evidence from Franklin's autopsy that Petitioner

> shot Franklin from a distance of at least four to six feet. This evidence contradict[ed Petitioner's] testimony that Franklin lunged forward to grab the shotgun. Furthermore, neither Sanderson nor Cook heard any fighting before the shooting took place and they both testified that Franklin did not have a gun that night. After the shooting, police found a screwdriver in Franklin's pocket.

*Williams*, 2007 WL 4404824, at *3.

A rational juror could have concluded from this evidence that Petitioner did not possess an honest and reasonable belief that his life was in danger. The prosecution adequately disproved Petitioner's theory of self-defense, and the state appellate court's conclusion that the evidence was sufficient to support Petitioner's conviction was objectively reasonable. Habeas relief therefore is not warranted on Petitioner's challenge to the sufficiency of the evidence.

**E.**

In his fifth and final claim, Petitioner alleges that the police destroyed or failed to preserve the tee shirt which Charles Franklin was wearing at the time of his death. Petitioner contends that the shirt was critical impeachment evidence, which would have shown that the shooting was done at close range and that he acted in self-defense when the victim attempted to wrest the shotgun from him.

The Michigan Court of Appeals adjudicated Petitioner's claim on direct review and rejected it. According to the Court of Appeals, Petitioner failed to show that the police acted in bad faith and that the failure to preserve evidence affected the outcome of the case.

- 20 -

**1.**

The United States Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Although *Brady*, "makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence," "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. To prevail on his claim, Petitioner

> must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Youngblood*, 488 U.S. at 57, 109 S. Ct. 333; *United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996).
>
> "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 57 n.*, 109 S.Ct. 333. It is not enough that the police knew that [the evidence] could be determinative of guilt or innocence if preserved or tested. . . . When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established.

*Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002) (end citation omitted).

**2.**

Lance Newman, the officer in charge of Petitioner's case, testified at trial that the police normally pick up a deceased victim's clothing from the morgue. In this case, however, he never

received Mr. Franklin's clothing because Franklin's body and clothing were released to the funeral home and the clothing was destroyed. Trial Tr. Vol. IV, 17, Dec. 19, 2005. It is apparent from this testimony that the police did not act in bad faith in failing to preserve Mr. Franklin's tee shirt.

Nor is there any indication in the record that Officer Newman or anyone else knew that Mr. Franklin's tee shirt had exculpatory value at the time the shirt was destroyed. In fact, the medical examiner testified that, although she did not perform a microscopic analysis of the shirt, she did look at Franklin's clothing and did not see any evidence of close-range firing on the shirt. Trial Tr. Vol. II, 190-91, Dec. 14, 2005. Petitioner himself testified that he was four to five feet away from Franklin when he shot him. Trial Tr. Vol. IV, 80, Dec. 19, 2005. This was consistent with the medical examiner's opinion that the end of the gun was four to six feet away from the victim's body when the gun was fired. Trial Tr. Vol. II, 185-86, 193, Dec. 14, 2005.

Furthermore, the medical examiner's opinion that the shooting was not done at close range was based on other factors besides the lack of soot or gunpowder stippling on Franklin's skin and shirt. More telling was the fact that the edges of the gunshot wound were scalloped, and wadding from the pellet was visible on the surface of the wound. The medical examiner explained that, if the shooting had been done at close range, the pellets would be very close together and there would be one large round defect as opposed to scalloping on the edge of the wound. The medical examiner further explained that, if the shooting were done from less than three feet away, the wadding would have had enough energy to go into the body with the pellet mass, as opposed to being stuck on the surface of the wound, as it was in this case. Trial Tr. Vol. II, 186-87, Dec. 14, 2005.

In conclusion, Petitioner has failed to demonstrate that the police destroyed critical impeachment evidence, which would have shown that the shooting was done at close range. Petitioner also has failed to show that the police acted in bad faith. He has no right to relief on the basis of his fifth claim.

## IV.

The state courts' rejection of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Consequently, the petition for writ of habeas corpus, ECF No. 1, will be denied.

## V.

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore declines

to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal because he was granted leave to proceed *in forma pauperis* in this Court, *see* ECF No. 4, and an appeal could be taken in good faith. FED. R. APP. P. 24(a)(3).

## VI.

Accordingly, it is **ORDERED** that Petitioner Williams' Petition for Writ of Habeas Corpus, ECF No. 1, is **DISMISSED with prejudice**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **GRANTED**.

Dated: November 21, 2014                           s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Chester Williams #134688 at Muskegon Correctional Facility, 2400 S. Sheridan, Muskegon, MI 49442 by first class U.S. mail on November 21, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>

- 24 -